## THE LOWLANDS.

(District Court, S. D. Georgia, E. D. July 28, 1906.)

1. ADMIRALTY—AMENDMENT OF LIBEL—JURISDICTION IN PERSONAM.

A libelant who has attached a foreign vessel on a libel in rem, based on a claim which does not constitute a maritime lien, cannot convert such libel by amendment into one in personam and proceed against the owner thereon, where no monition was served, and the owner has not entered a general appearance.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Admiralty, § 524.]

2. SAME—EFFECT OF APPEARANCE IN SUIT IN REM.

The appearance of the foreign owner of a vessel to claim and release the same when seized in a suit in rem does not constitute a general appearance, such as to give the court jurisdiction to render a personal judgment against him.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Admiralty, § 382.]

In Admiralty. On motion for leave to amend libel.

Convers & Kirlin and William R. Leaken, for claimants.

Twiggs & Oliver and Simon N. Gazan, for libelants.

SPEER, District Judge. This is a libel brought by Nancy Williams, widow of Leander Williams, late of Savannah, Ga., against the steamship Lowlands, of which D. Lloyd is master, and her tackle, sails, apparel, furniture, boats, equipment, and other appurtenances and cargo, and all persons intervening for their interest in the same, in a case of tort and damage for the death of the libelant's husband; the damages claimed being both civil and maritime. It is alleged that on the 19th day of July, 1905, the steamship Lowlands was lying at the Atlantic Coast Line Wharf, in the Savannah river, city of Savannah, for the purpose of being loaded with rosin and turpentine, and that libelant's husband was one of a number of laborers employed by Alexander White, stevedore, to assist in loading said vessel. It is further alleged that in the course of his employment on said day libelant's husband was working in the hold of said steamship, removing barrels of rosin from the place where they were deposited after descending through the hatch on the lower floor of the vessel, and storing said barrels in their proper place in the ship. On the morning of the day aforesaid the pendant fall, or hooks attached to the barrels for the purpose of lowering into the hold, was released from a barrel which had been deposited at the point where libelant's husband was working and was ascending to the upper deck for the purpose of receiving other barrels. The upper hatch, beneath which libelant's husband was working, is on the main deck, and the hatches are equipped with what are known as "strong backs," or iron beams, which are laid horizontally across the opening of the hatch, for the purpose of affording a rest on which to lay the hatch coverings. There are three main "strong backs"—one situated in the middle of the hatch, and known as "midships strong back," and one on either side of this, toward the end of the hatch, and known, respectively, as "aft strong back" and "forward strong

back." At the time libelant's husband was killed the "aft strong back" and the "midships strong back" had been removed, leaving the "forward strong back" stretched across the hatch, opening at the forward part thereof, on which said "forward strong back" was laid the hatches, which are constructed of heavy timber, about 3½ inches in thickness, and each hatch being about 5 feet long, and about 2 feet wide, and being quite heavy. The pendant fall in ascending caught in the "forward strong back," and as the pendant fall was being hoisted it pulled the "forward strong back" up with it, but before being raised very much the gang which was working about the hatch on the main deck called to the "donkey runner," or man who was in charge of the donkey engine used in lowering and hoisting cargo, to stop his engine. By reason of the fact that said donkey runner failed to obey the signal and continued to hoist said pendant fall, the "forward strong back" and hatches were pulled from their place of rest and fell back into the hold to the lower floor beneath, where libelant's husband was working, said strong back and hatches striking libelant's husband in the head, crushing the same, and killing him instantly. The libel alleges that libelant's husband was engaged in his usual and accustomed duty, and in no way contributed to the causes of his death, and charges that his death is due solely to the incompetency of the said donkey runner and his failure to stop the engine when signaled, which incompetency was known to the master, or should have been known in the exercise of proper care and caution, but which was unknown to libelant's husband. Libelant alleges that she has been damaged in the sum of $10,000.

The prayer is for process of attachment against the steamship Lowlands, etc., and that said D. Lloyd, master, and all other persons having or pretending to have any right, title, or interest therein, and in particular Joseph F. Wilson & Co., owners, of West Hartlepool, England, may be cited to appear, and answer all and singular the matters propounded, and that this court will pronounce for the damage alleged and for such other relief to the libelant as shall to law and justice appertain, and also to condemn said steamship, etc., to be sold to pay the same. No monition was issued on this prayer, and no advertisement was had. The marshal made no personal service, but attached the vessel and its equipment. The owners who were cited to appear in the process filed their claim to the ship, and gave bond for her release.

The claimants and owners except to the libel, because the allegations do not disclose any admiralty and maritime lien and claim upon the said vessel whereupon the judgment prayed for should be founded, and therefore this court has no power to entertain said libel in rem, because no monition has been caused to be published by the libelant, and other grounds of exception. Proctors for libelant, in their brief, "admit the soundness of the first point," and concede that they have no remedy in rem. They contend, however, that the prayer of the libel makes the libel a joint proceeding in rem and in personam, and that they can dismiss as to the in rem feature and maintain the action in personam. They offer an amendment to the libel, which in

effect converts the proceeding into an action in personam. They further contend that monition is unnecessary when the respondent gives bond and files a claim to the property; that by giving bond the defendants admit the jurisdiction of the court and waive service.

The question for decision arises on the allowance of the amendment offered. As already stated, proctors for libelant admit that she has no right to proceed in rem for the death of her husband. They state in their written brief, "our contention is that our prayer in the libel made the libel a joint proceeding in rem and in personam, and that we can dismiss as to the in rem feature and maintain the action in personam." They continue, "The amendment which we offer effectively converts the proceeding into an action in personam." The libel filed is clearly a libel in rem. It is not a joint proceeding in rem and in personam. It can hardly be contended that the libelant could dismiss as to the rem, and proceed only in personam on the original libel. The amendment proposed as the proctor himself states "converts" the proceeding into an in personam proceeding. The citation that B. Lloyd, master, and all other persons having or pretending to have any right, etc., and in particular Joseph F. Wilson & Co., owners, etc., may be cited to appear and answer, etc., is language appropriate to procedure in admiralty for the claimant to come in and release the property. The master has appeared only to protect his interest in the ship. As held in The Monte A. (D. C.) 12 Fed. 334, 335:

"It would be unjust to hold that a foreign owner shall not appear in a foreign court to reclaim his property as against an unauthorized seizure without necessarily subjecting himself to liability for a personal judgment against which he has never been cited to defend."

In this cause there is no appearance by the claimant except upon the objections to the proceedings in rem.

The amendment converting the libel in rem into a libel in personam should therefore be disallowed.