Joseph MEGLIO, Libelant,

v.

UNITED STATES LINES, Inc.,
Respondent,

and

Pittston Stevedoring Corporation, and
William Spencer & Son Corporation,
Respondents-Impleaded.

No. 19882.

United States District Court
E. D. New York.

July 13, 1956.

Samuel P. Fensterstock, New York City, By Jacob Rassner, New York City, for libelant.

Kirlin, Campbell & Keating, New York City, By James B. Magnor, New York City, for respondent.

Monica & Feury, New York City, By Joseph P. Feury and James L. Duncanson, New York City, for respondent-impleaded Pittston Stevedoring Corp.

Macklin, Speer, Hanan & McKernan, New York City, By Leo F. Hanan and Martin J. McHugh, New York City, for respondent-impleaded William Spencer & Son Corp.

BYERS, District Judge.

The libelant, a longshoreman employed by Pittston, impleaded respondent, was injured on December 21, 1950, while working in the lower hold No. 1 on the S. S. American Scientist, then lying at Pier 12, Staten Island, which was an Army Base. The cause of his injury was the fall from a pallet which was being

lowered into the hold, of a bundle of three tractor treads bound together by a rope or cable.

He sustained serious injury to his left foot and ankle, the nature and extent of which need not be now stated.

The libel was filed in January of 1952 in the Southern District whence it was duly transferred to this court. That libel sought recovery in personam from United States Lines as owner of the ship involved.

In June of 1952, the respondent filed a petition impleading Pittston and one year later both filed a petition impleading William Spencer & Son Corp., and it will be observed that this was within three years of the date of the accident.

The case was tried in this court from May 22 to May 26, 1956; at the conclusion of the trial it was stated that the libelant would consent that the original libel be dismissed; it may be stated in parenthesis that this was said to be the result of settlement negotiations between the libelant and the ship owner respondent.

There are but two questions now requiring determination: The first is purely technical, and the second is equally meritorious.

On June 20th and prior to the receipt of the briefs of counsel, libelant made a formal motion to amend the pleadings and to conform them to the proof; that motion was opposed on the part of Spencer on the grounds that to grant it would in effect permit the amendment of the libel after the statute of limitations had run against the libelant; on the further ground that the libelant had never asserted a direct claim or cause of action against Spencer "because of the libelant's failure to answer and adopt the impleading petition;" that if the libel were to be so amended the result would be that a cause of action against Spencer would be asserted for the first time.

It will be convenient therefore to dispose of the motion as part of the entire case.

The technical question is directed to the alleged failure of the libelant to comply with the relevant portions of the 56 Admiralty Rule, 28 U.S.C.A., which is entitled,

"*Rule 56. Right to bring in party jointly liable*

"In any suit, whether in rem or in personam, * * * respondent * * * shall be entitled to bring in any other * * * person (individual or corporation) who may be partly or wholly liable either to the libellant or to such claimant or respondent by way of remedy over, contribution or otherwise, growing out of the same matter. This shall be done by petition * * * or at any later time during the progress of the cause that the court may allow. Such petition shall contain suitable allegations showing such liability, and the particulars thereof, and that such * * * person ought to be proceeded against in the same suit for such damage, and shall pray that process be issued against such * * person to that end. * * * such suit shall proceed as if such * * * person had been originally proceeded against; the other parties in the suit shall answer the petition .* * * such new party shall answer the libel * * *.' "

While it is true that this libelant did not file an answer to the impleading petition that sought to bring Spencer into the cause, it is thought that he did the equivalent in that his proctor filed an affidavit in connection with the motion which was verified May 28, 1953, from which the following is quoted:

" * * * The accident occurred December 21, 1950 at the New York Port of Embarkation located in Staten Island, Pier 12, Stapleton, S. I. The facts, as borne out by records of the Department of the Army, particularly the Marine Casualty Investigation Department, shows that William Spencer and Sons Corporation, or its agents, servants or employees, had performed certain stevedoring

services for the railroad carriers, and that the cargo involved in the accident was placed on certain loading pallets by employees of the William Spencer Company, Inc. and that the storing or loading of these heavy tank belts were performed by William Spencer & Sons Corp.

"Besides the claim of the Libelant that the winch which was lowering these platforms into the No. 1 hold was defective, the Libelant will also endeavor to establish that the tank belt fell from pallet because it was improperly placed on the belt in the first place by William Spencer & Sons Corp., and that the accident was caused by their primary and active negligence.

"Wherefore, your deponent respectfully joins in this application and requests that the Respondent's application be granted in all respects and that the said William Spencer and Sons Corp. be made a party Respondent herein and that an Order be signed permitting William Spencer & Sons Corp. to be impleaded as Respondent herein."

Again in parenthesis, it is to be observed that at the trial the libelant disclaimed any intention of offering proof to the effect that the winch involved in the lowering of the pallet was defective.

No authority has been found to the effect that for the purpose of the motion to conform the pleadings to the proof, the court is not at liberty to regard the foregoing affidavit as the equivalent of an answer on the part of the libelant to the impleading petition, since its office was clearly to apprize Spencer of the claim which the libelant asserted against it, of negligence with respect to the libelant.

The following quotation from Jensen v. Bank Line, 9 Cir., 26 F.2d 173, at page 175, is thought to be relevant:

"He [the appellant] ignored the command of rule 56, and made no answer to the petition. *Nor did he at any time adopt the allegations there-of or request findings thereon, or become a party to that proceeding."* (Italics supplied.)

Cf. The B. B. No. 167, D.C., 22 F.Supp. 55, at page 61 (concluding paragraph).

The answer filed by Spencer to the impleading petition conformed to the requirements of Rule 56 as being the answer of Spencer to the libel. Article Fourth reads in part:

"That the injuries and damage sustained by Joseph Meglio, if any, were not caused or contributed to by any fault, neglect, want of care or affirmative act or omission on the part of respondent-impleaded William Spencer & Son Corporation, its agents, servants or employees, or those for whose acts it is responsible, but the same were caused wholly and solely by the fault, neglect and want of care on the part of the libelant and/or on the part of the respondent, United States Lines Company, and/or on the part of the respondent-impleaded Pittston Stevedoring Corporation," etc.

Thus it is clear that the purposes sought to be accomplished by the above quoted provisions of the 56 Rule were substantially effected, although there was no pleading filed on the part of the libelant in accordance with the precise requirements so stated.

It is evident that Spencer regarded the issues as having been clearly set forth, and its answer is obviously the kind of pleading in form and substance which would have been filed if the libelant had literally and precisely obeyed the quoted provisions of the rule.

It is not hereby intended to condone a practice which may have been adopted to meet a temporary exigency. All that this court means to hold is that the issue which libelant tendered as against Spencer was clearly proclaimed; and that while requirements of form have their place if practice is not to be permitted to degenerate into nebulous concepts, matters of substance are of greater importance. If the affidavit of counsel had

been embodied in an answer to the petition, Spencer would have been no more clearly notified of the claim against it than it has been under the expedient which counsel adopted. His mistake in practice should not be visited upon his client unless the ends of justice would thereby be served.

This means that the contention of Spencer must be rejected that any new cause of action would be imported into this controversy as against it by granting the libelant's motion to amend the pleading, and to conform them to the proof, since this would merely accomplish under another guise that which has already been in effect pleaded.

Thus the libelant's motion is granted.

Turning now to the merits of the cause as against Spencer, it is necessary to describe the operations involved in placing the reels on the pallet which was performed by Spencer, and the subsequent handling of the pallet by Pittston, the stevedore conducting the loading of the cargo on the ship.

What has been called the bundles, consisted of three reels or spools of tractor treads which were in cylindrical form about 3 to 3½ feet high and 12 inches or so in circumference; a bundle consisted of three such elements side by side, bound together in what for convenience has been called a three-leaf clover form. Apparently that was the make-up of a bundle as carried on railroad lighters to a position adjacent to the pier where the ship lay.

Spencer had charge of those bundles and placed them upon pallets while they were yet upon the lighters, under the observation of Pittston employees; those pallets were about 6 feet long and 4 feet wide, and for the purpose of being raised steel cable bridles were attached, namely, two of such cables were made fast to a steel rod put into position under the pallet at either end, and thus the two loops were brought together at a height of about 6 feet, and at their junction, were made fast to a hook, whereby the pallet was raised. Then the pallets were raised by the action of a hoisting device which carried the pallets in loaded condition to the floor of the pier; thence they were hoisted by the ship's gear into a position over an open hold and then dropped by a fall to the bottom of the hold; there longshoremen handled the pallets and moved the bales or bundles for the purpose of stowing the cargo.

As stated above, the libelant was injured because one of these bundles fell from a pallet while it was in the act of being lowered, as the result of the striking either of the pallet itself or the fall from which it was suspended, against the hatch coaming directly overhead of the place where the libelant was working.

That coaming was about 20 feet above the floor of the lower hold, and it is clear from the testimony that the descent of a given pallet was not in a straight line, there being a tendency to sway during the lowering, whereby the striking against the coaming was caused.

The narrow question of negligence on the part of Spencer comes down to the contention that the bundles should have been laid flat on the pallet instead of being stood on end, because in the latter position it was easier for an outside bundle to topple over the side or end of the pallet than would have been the case had they been disposed horizontally—that is, on their sides.

For the libelant's side, there is the undisputed fact that one of the bundles did topple over either the side or the end of the pallet; and in the Spencer case there is testimony that the practice of placing bundles of this size in an upright position was the customary and usual one and had never encountered criticism from any source. Thus the uncongenial task is thrust upon the court of deciding whether the mere happening which has been recited is sufficient evidence of negligence on the part of Spencer.

The testimony is uncontradicted that as soon as the pallets were laden on the lighters and hoisted on to the pier, they came under the control and custody of Pittston, and if they were deemed to be unsafe by reason of the make-up of the load on the pallet, responsibility for that

condition must be attributed in part at least to Pittston, on the theory that if the loading was obviously unsafe, the opportunity was present for Pittston either by the use of nets or other rigging, to prevent exactly what occurred in this case.

Since it was obvious to Spencer that once the pallets were loaded they had to be hoisted high enough to swing over to the pier to be landed there, safe loading involved so placing the reels on the pallet that they would not topple off while the latter was in transit; the safety of those working on the pier so required. This means that if a bundle of reels left the pallet before the latter reached its resting place, the insecure loading was the initial fault, and the failure to correct that condition by Spencer, before the pallet was taken over by Pittston was a separate omission in itself.

It was also the responsibility of Pittston to see that pallets being hoisted by it should not constitute a hazard due to falling objects therefrom, to persons who might be in the path of danger; it is unimportant whether that duty of Pittston arose at the moment of placing the reels on the pallets, or when hoisting and delivery were under way. The duty was present and was not performed.

It is no answer for Spencer to argue that it followed customary practice in placing these bundles on their ends. If the practice proved to be unsafe, the libelant should not be made to suffer, but rather the agency responsible for the condition so created.

It is further argued for Spencer that the proof is deficient that the bundle which struck the libelant was actually loaded by it onto the particular pallet which was involved.

■ The testimony of Gross, the Spencer foreman who was in charge of the loading this day, is fairly persuasive in the affirmative; at least sufficiently so in the opinion presently held, to justify the finding which is hereby made, that Spencer did the loading of the pallet which held the bundle that fell and struck this libelant, as described in the libel.

The finding is induced partly by the reflection that ever since June, 1953, when the impleading petition was filed that brought Spencer into the case, the latter was admonished that it might have to adduce evidence to exculpate itself in that respect. The demand made by it at the trial for the production of cargo and loading records which might be relevant, was therefore entirely belated; the delay in thus preparing the case for trial was consistent with a realization that the finding above made, was inevitable.

■ It is further found that the libelant's injuries were the result of the improper and negligent loading of a bundle on to a pallet by the respondent Spencer.

The results of the foregoing may be thus tabulated:

(1) Pursuant to the consent of the libelant stated in the record, the libel against the respondent United States Lines, Inc., is hereby dismissed; the necessary effect thereof is that the impleading petition directed to the respondent Pittston Stevedoring Corporation necessarily falls, since it was designed to accomplish indemnity only.

(2) The libelant will take a decree against William Spencer & Son Corporation, with costs, which decree will be interlocutory in form, because the medical testimony is in conflict concerning the effect rather than the nature and extent of the libelant's injuries. In the present state of the record, the court is unable to make an award of damages for the reason that the testimony leaves the court in doubt as to whether an amputation is required, or further corrective surgery of a less drastic character; the medical testimony is also in conflict as to the extent to which the libelant has failed to cooperate in bringing about all possible recovery from the crippling condition which now afflicts him.

The decree should also set forth the amendment to the libel which is granted pursuant to the motion above discussed.

In order that this subject may be further explored in the light of informed testimony, and the court may have the benefit of a finding of a Special Commissioner based thereon, the interlocutory decree is to contain a provision for the appointment of a Commissioner to take testimony and report on the subject of the libelant's damages.

Settle decree.