### NEPTUNE STEAM NAV. CO. et al. v. BORKMANN.

(Circuit Court of Appeals, Fourth Circuit. November 6, 1902.)

#### No. 443.

1. SHIPPING—INJURY OF STEVEDORE—UNSAFE APPLIANCES.

   The fact that a piece of wire rope furnished by a ship for the use of stevedores broke under a weight only one-tenth as great as it should have safely supported if in good condition is sufficient evidence that it was not in good condition to render the ship liable for a resulting injury to a stevedore on the ground of its failure to furnish proper and safe appliances.

2. SAME—LATENT DEFECTS.

   A stevedore was injured through the breaking of a band furnished by the ship for rigging a hoisting boom to the mast. Such band was made some three months before, under direction of the ship's officers, from a piece of old wire hawser, and covered with service or parceling, and broke on account of the rusted and weak condition of the wire. *Held*, that the ship was not exonerated from liability on the ground that the defect was latent, because not apparent by reason of the covering.

Appeal from the District Court of the United States for the District of Maryland.

Robert H. Smith, for appellants.

John C. Kumpf and Louis P. Hennighausen, for appellee.

Before SIMONTON, Circuit Judge, and BRAWLEY and WAD-DILL, District Judges.

BRAWLEY, District Judge. This is an appeal from the decree of the United States district court of Maryland, in admiralty, awarding $4,000 damages to the libelant for personal injuries sustained while in the performance of his duty by reason of defective appliances used on the steamship Venango. Borkmann, the libelant, was one of a gang of stevedores employed to unload the ship, January 22, 1901, while lying at her wharf in Baltimore, and was assisting in rigging a heavy boom which was to be used in discharging the ship's cargo, and while so engaged a wire rope or band which was fastened to one end of the boom parted, causing the boom to fall. The operation of unloading was in charge of the stevedores, the ship furnishing the appliances. This boom was about 25 or 30 feet long, about 6 inches in diameter, and its weight, with the rigging attached, was probably about one-half a ton. While the boom was being raised, three men were stationed on the port side to hold the lines on that side, so that the boom should not swing to starboard, as it had a strong tendency to do on account of a heavy list to that side. Borkmann was holding the guy rope on the starboard side. It does not appear to have been necessary for him to have been on that side, as the ship had a heavy list to starboard, but it cannot be said that he was improperly there. The boom was raised by a winch, and after being elevated to its proper position, and while two of the stevedores were on the mast, endeavoring to fasten it to the mast, where it was to be used as a derrick, the strap or band with which it was to be fastened gave way, and the boom fell with a sudden crash, and at the same time Borkmann fell senseless to the deck. One of the witnesses nearest to the scene says that when the boom fell it struck the after house, breaking off a piece about three feet in length, and that this broken piece struck Borkmann on the head. Other witnesses say that the boom did not strike the house, but struck the hatch combing, and that Borkmann was not struck by it, but slipped on the deck, which some of the witnesses say was icy. Other witnesses deny that there was any ice on the deck. The wire band or rope, covered with what is called variously "service" or "parceling" or "season," was not produced at the trial below, but by leave of the court was produced later, and was one of the exhibits before us. According to the testimony of the mate, it was made from a wire hawser between three and four months before the accident, and would have had strength, if new and in good condition, to bear ten times the weight of the boom. That it broke while being properly used, and while subject to no unusual strain, is a fact which is not disputed, and that seems to demonstrate that it was not safe and sufficient for its purpose. Several witnesses have testified that the wire looked rusty. It is claimed by the appellants here that, inasmuch as it was covered with the parceling or service, no weakness or defect was apparent, and that the ship is not liable for injuries caused by latent defects. We cannot allow this defense, for the testimony shows that the wire rope used in making the band was cut from an old hawser

and made into a band under the supervision of the ship's officers only three or four months before, and it does not fall within the class of appliances to which the rule as to latent defects applies; and we are of opinion that the tackle which the ship furnished was not safe and sufficient, as required by law.   It does not seem to us material to decide between the conflicting theories as to how Borkmann received his injuries.   Whether he was struck by the boom, as he thought, and which we think is not probable, or by the piece of the boom which was broken in its fall, or whether, confronted by sudden danger, compelled to act instantaneously to avoid the consequences of impending peril, he slipped and fell, and thereby inflicted the injuries to his head, seems immaterial, under the circumstances.   The fact that the strap broke under the circumstances disclosed is sufficient evidence of its weak and insufficient condition; and that a ship whose duty it is to furnish safe tackle is liable if the tackle is insufficient, is clear.   The testimony of the medical expert who examined the libelant, as disclosed in the record, would seem sufficient to raise a doubt whether the enfeebled condition of the libelant at the time of the trial could be properly attributable to the injuries received, this witness testifying that, in his opinion, his condition is due to tuberculosis; but in view of the uncontradicted testimony offered in behalf of the libelant that he was put to bed immediately after the accident, and was confined to his bed for 17 weeks, and that previous to that time he was apparently healthy and an able-bodied man, able to work every day, and that he has not been able to do any work since, and with the opinion of the district judge, who saw the witnesses and the libelant, that the injuries were due to this accident, we feel constrained to the same conclusion.

The decree of the district court is affirmed.