## JENSEN v. BANK LINE, Limited, et al.

### THE AYMERIC.

Circuit Court of Appeals, Ninth Circuit.
May 14, 1928.

No. 5352.

1. Shipping ⟨key⟩86(2¾)—Finding that shipowner was not liable for injuries to stevedore, caused by breaking of alleged defective shackle bolt in connection with loading booms, held proper under evidence.

In libel by employee of stevedore company against ship for injury sustained by him while loading lumber, due to breaking of shackle bolt attached to end of pennant leading to one of loading booms of ship, finding of trial court that shackle was not defective or that defect was of such slight character that it could not be ascertained by exercise of ordinary care, and that shipowner was therefore not liable, held proper under conflicting evidence.

2. Shipping ⟨key⟩86(2⅜)—Injured stevedore, in libel against ship for injuries sustained when shackle pin connected with loading booms broke, was required to prove negligence.

Fact that shackle connected with loading booms of ship broke under strain of lumber being loaded on ship, causing injury to employee of stevedore company, did not of itself prove shipowner's negligence in using the pin, under doctrine of res ipsa loquitur, and libelant was required to show that fracture was result of defect, and that claimant knew of that defect, or by the exercise of ordinary care could have discovered it.

3. Shipping ⟨key⟩84(3¼)—Where stevedore continued to load ship with gear furnished without further complaint, stevedore company was not liable for failure to provide safe working conditions (Admiralty Rule 56).

In libel proceedings by employee of stevedore company for injury sustained in loading lumber on steamship by breaking of pin of shackle connected with loading booms, dismissal of ship claimant's petition against stevedore company under Admiralty Rule 56 was not error, where stevedore continued to load ship with gear, which was furnished without further complaint, even if stevedore company improperly rigged preventer guy and failed to provide stevedores with proper place to work.

4. Admiralty ⟨key⟩50—Libelant who failed to adopt or answer claimant's petition against third party could not complain that petition was dismissed (Admiralty Rule 56).

Where in stevedore's libel proceedings against ship, in which claimant brought proceedings against stevedore company under Admiralty Rule 56, libelant failed to answer petition or to adopt allegations thereof and to request findings or to become party to proceedings against his employer, he was not entitled to assign error on account of court's dismissal of claimant's petition.

5. Admiralty ⟨key⟩50—Libelant cannot be compelled to establish personal liability of third party brought into libel proceeding by claimant (Admiralty Rule 56).

By disregarding claimant's petition bringing in third party under Admiralty Rule 56, libelant exercises right not to proceed against third party, and cannot be compelled to establish the personal liability of the third party; proceedings against third party being independent.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Libel by George Jensen against the Bank Line, Limited, as claimant of the British steamship Aymeric, in which W. J. Jones & Son, Inc., was joined on the claimant's petition. From a decree dismissing the libel and the claimant's petition, libelant appeals. Affirmed.

While the appellant was working as an employee of a contracting stevedore company, in loading lumber upon a steamship, the pin of a shackle attached to the end of a pennant leading to one of the loading booms of the ship gave way under the strain of a load of lumber which was being dragged across the dock to the ship, and the appellant was injured by a blow from a block and a guy when the boom swung around. The gist of the allegations of the libel on which recovery was sought was that the loading gear of the vessel was not in seaworthy condition, that the shackle bolt which broke was defective, and that the defect could have been discovered by the vessel by the exercise of reasonable care, but that the vessel negligently failed to make inspection, and negligently turned over the loading gear to the stevedores and permitted them to use the same. The court below, in dismissing the libel, said:

"The shackle itself was introduced in evidence. Experts were called. Those called by the libelant testified positively that the shackle was manifestly defective and that the defect could have been ascertained by the exercise of reasonable care. Experts were called by the ship and testified directly to the contrary. All these experts examined the same shackle. One of them said, 'It is defective.' The other said, 'It is not defective.' So I suppose under these circumstances the court is justified in exercising its own judgment. I have carefully examined the shackle, and, so far as I can see, there is no substantial defect in it; certainly to my mind it is clear that, if there was a slight defect, it was of such a character that it would not have been ascertained by the exercise of ordinary care. Therefore the libel for this reason will be dismissed."

Lord & Moulton, of Portland, Or., for appellant.

Wood, Montague & Matthiessen and Erskine Wood, all of Portland, Or., for appellee the Bank Line.

E. L. McDougal, of Portland, Or., for appellee W. J. Jones & Son, Inc.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] Concerning the condition of the shackle pin and the strain under which it broke, all the testimony on behalf of the appellant, with the exception of that of one expert, was heard before the court. There was evidence that the pin had been subjected to extraordinary strain in dragging a heavy slingload of lumber, estimated by the first officer of the ship to weigh 2½ tons, a distance of 180 feet across the dock. An expert witness, who had been employed in the repair department of the Emergency Fleet Corporation, testified that in his judgment the pin was in prime condition prior to what he characterized as the enormous pressure which broke it, that otherwise it would not have distorted the eye of the pin or drawn the jaws of the shackle out of parallel. The chief engineer of the Willamette Iron & Steel Works testified that in his opinion the pin was a good piece of metal before it broke, and that its appearance indicated a tough and live metal. On the other hand, an instructor in a local polytechnic school testified that the appearance of the pin indicated that it was crystallized, and several witnesses, who were longshoremen, or sailors, or workmen, also testified that the pin was crystallized, and some testified that there were visible defects which should have led to its rejection for further use. There was undisputed testimony of officers of the ship that all shackles were discarded after six months of use. We are of the opinion that no ground is shown for setting aside the conclusion reached by the trial court upon the testimony of the witnesses and the appearance of the shackle pin.

[2] Nor do we find merit in the contention that the fact that the pin broke was in itself evidence of negligence in using the same or that this is a case in which the rule of res ipsa loquitur may be invoked. Citation is made of The Rheola (C. C.) 19 F. 926; Steel v. McNeil (C. C. A.) 60 F. 105; The Portland (D. C.) 213 F. 699; Neptune Steam Nav. Co. v. Borkmann (C. C. A.) 118 F. 420. In the Rheola Case, a chain which was in appearance old, rusted, and worn, and which, if in proper condition, should have sustained a weight of 6 or 7 tons, broke under a weight of 1,800 pounds, shortly after a similar chain had broken under like conditions. It was held that there should have been a careful and thorough test or examination before using the chain. In Steel v. McNeil, the injury was caused by the slipping of the pin from the eye of a shackle because of defects which had been noticed and pointed out to the mate by one of the longshoremen. In Neptune Steam Nav. Co. v. Borkmann, the fact that a piece of wire rope furnished by the ship for the stevedores broke under a weight only one-tenth of that which it should have supported if in good condition was held to be evidence that it was not in good condition. In The Portland, Judge Wolverton held the steamship liable by reason of the breaking of a rope sling which had become frayed, worn, and attenuated, as would have been apparent to one making an inspection thereof, and that the fact that it broke was proof positive that it was defective. In the case at bar, the evidence was conflicting as to whether the shackle pin should have sustained a weight as great as that which caused it to break, and there was conflict in the evidence as to whether it was defective, and as to whether, if defective, the defects were discoverable by inspection. The most than can in general be claimed for the occurrence of such an accident is that, while it may tend to prove that a defect existed in the appliance which was used, the libelant must go farther and show that the fracture was the result of a defect, and that the claimant knew of that defect or by the exercise of reasonable care could have discovered it. Patton v. Texas & P. R. Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361; San Juan Light Co. v. Requena, 224 U. S. 89, 98, 32 S. Ct. 399, 56 L. Ed. 680.

Under Admiralty Rule 56, which permits either the claimant or the respondent to bring in a party jointly liable to any party to the suit by way of remedy over or contribution, and provides that the suit shall proceed as if such new party had been jointly proceeded against, and requires the other parties in the suit to answer the petition and the new party to answer the libel, the owner of the vessel filed a petition against the stevedore company, praying that it be cited to answer the petition and the libel, and alleging that the accident occurred through the stevedore's improper and negligent use of the ship's gear. The stevedore company answered, alleging that the gear which was turned over to it by the steamship was represented to be in good condition, and was rigged by the officers and employees of the ship, that, if there was negligence in the use there-

of, it was the negligence of the appellant and his fellow servants, and, if there were defects in the gear which the stevedore company could not by the exercise of reasonable care discover, the accident was caused by the negligence of the steamship and not through the fault of the stevedore company. When the libel was dismissed, the petition was also dismissed.

[3] The appellant assigns error to the failure of the trial court to find that the stevedore company improperly rigged the preventer guy, and used an unseaworthy and defective shackle, and failed to exercise reasonable care in using said preventer guy, and negligently failed to provide the appellant with a reasonably safe place to work. The basis of the contention seems to be that the evidence showed the gear to be defective for want of preventer guys attached to the peak of the boom. The officers of the ship testified that at the request of the president of the stevedore company they installed preventer guys, one end of which was attached at the tip end of the boom, and the other to a bulwark stanchion below; each guy being a wire cable 70 or 80 feet in length and three-fourths of an inch in diameter, and that a day or two prior to the accident the preventer guys were removed by the longshoremen. As to this there was sharp conflict in the testimony. The longshoremen, in the main, testified that there was no preventer guy on the ship when they began their work; that they applied to the ship for preventer guys, and were told that there were none; that they were given short guys of 20 feet in length, which they pieced together and used as a preventer guy running only from the block down to the deck to safeguard the tackle in the event that the ropes broke. But the fact remains that the stevedores continued to load with the gear without further complaint of its condition, and, if there was negligence in that regard, it was their own negligence. We find nothing in the record which required the trial court to make findings on the issues brought in by the petition.

[4, 5] Nor do we think that the appellant is in a position to assign the errors, if errors there were, which he now relies upon. He ignored the command of rule 56, and made no answer to the petition. Nor did he at any time adopt the allegations thereof or request findings thereon, or become a party to that proceeding. In New Jersey Shipbuilding & Dredging Co. v. Davis (D. C.) 291 F. 617, 619, Judge Learned Hand said: "The petition was a pleading requiring an actor and a reus just as much as though it had been a libel in the admiralty, a bill in equity, or a declaration at law." In The Silverway (D. C.) 14 F.(2d) 154, 157, it was said: "The proceeding under rule 56 is an independent proceeding." In disregarding the petition as he did, the appellant exercised his right to elect not to proceed against a party as to whom he made no claim, and whom the appellee had no right to substitute in its stead as the party primarily liable. Having elected to proceed in rem, he was not compellable to establish the liability in personam of a new party brought in by the claimant. The Providence (D. C.) 293 F. 595, 599.

The decree is affirmed.