## CORRADO v. PENNSYLVANIA R. CO.

### No. 68;  Docket 21096.

United States Court of Appeals
Second Circuit.

Nov. 29, 1948.

Writ of Certiorari Denied Feb. 28, 1949.
See 69 S.Ct. 641.

Alfred W. Andrews and Samuel E. Swiggett, both of New York City, for Pennsylvania R. Co., respondent-appellant.

Samuel P. Fensterstock and Harry S. Austin, both of New York City, for Antonio Corrado, libellant-appellee.

Before L. HAND, Chief Judge, and AUGUSTUS N. HAND and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The libellant, an employee of the Penn Stevedoring Company, was at work discharging a car on a float belonging to the respondent Pennsylvania Railroad Company. The float had ten freight cars upon it and was moored to Pier 29, North River, New York. The ten cars were broken up into two rows of five cars each, abreast, with a platform between them. The libellant was one of a gang of three or four other longshoremen engaged in removing crates of fruits and vegetables from the cars on the float and at the time of the accident hereafter described was at work removing cargo from the last car on the offshore side of the pier through a door on the platform side of the float. After working for about an hour libellant went outside of the car to open the car-door on the offshore side of it in order to get light and air.

The libellant by means of a handle near the center of the door pulled it open a distance of about the width of two fingers, the door bent over from the top and fell before he had an opportunity to protect himself. As the door was falling upon him he saw that there were no rollers at the top of it, although there were rollers at the bottom. The door fell because it was defective, which—as the trial judge found—a reasonably careful inspection would have disclosed. The judge further held that

there was a custom and practice among railroad car inspectors to chalk mark or post notices indicative of defective doors, and there were no chalk marks or notices posted on the door that fell; and that the defects existed at the time libellant and his fellow longshoremen entered the car to discharge the cargo.

The trial judge held the respondent liable on the ground that it owed the libellant as a business visitor a safe place in which to perform his work and that the defective condition of the door which caused his injuries could have been discovered by a reasonably careful inspection. He also held that the libellant was entitled to recover full indemnity because the condition of the door rendered the vessel unseaworthy; and further held that there was no proof of contributory negligence.

■ It is unnecessary to decide whether a defect in one of the cars loaded on the float constituted unseaworthiness of the vessel. It may be argued that the car was only part of the cargo rather than a part of the equipment of the ship and that the defect was therefore not a basis for a finding of unseaworthiness. On the other hand, it may be argued that the defective car-door was analogous to the leaky tank which was considered by this court in The G. R. Crowe, 2 Cir., 294 F. 506, sufficient to render the vessel unseaworthy with respect to other cargo. Liability of the owner of the vessel to the libellant seems to be more appropriately rested upon negligence toward a business visitor than upon a doubtful extension of the doctrine of unseaworthiness to defects in the cargo or in a container of the latter. There is sufficient basis for liability because of failure to warn the libellant of a danger without invoking a theory of liability for personal injuries due to a species of unseaworthiness for which we are referred to no definite authority.

The defect in the door of the car evidently existed at 10 o'clock in the morning of September 5, 1946, when libellant went to work unloading. The car was received on respondent's float and towed across the North River from New Jersey by a Pennsylvania tug to Pier 29 on the New York side and was then moored alongside the pier. The door was found to be defective as to its upper rollers after libellant had been working about an hour. There is no evidence that anything happened to cause any damage to it after it was received by the railroad in New Jersey and its defective condition at about 11 o'clock in the morning justifies the inference that the upper rollers were off at the time it was first delivered to the float. The railroad had control of the car and float before it was moored at Pier 29 and was in position to show that the rollers were not off while in its possession. The work of the longshoremen in unloading had no tendency to disrupt the rollers which naturally belonged on the off-shore side of the car the door of which so far as appears was not touched until it was opened and fell on libellant because of its defective condition.

■ There was testimony tending to show that there was a custom of the railroad to inspect cars. Such a practice was doubtless intended to detect obvious defects which might result in injury to their own employees or to other persons who might properly be expected to be in or around the cars. See Dominices v. Monongahela Connecting R. Co., 328 Pa. 203, 195 A. 747. The testimony also indicated that it was the custom of the railroad to mark any defective part with chalk or post a notice thereon. This was shown by the testimony of the libellant and also of the stevedore foreman, Green. There was no chalk mark on the car in question and in the absence of a chalk mark or some other notice of defects, the court properly found the railroad guilty of negligence either in failing to inspect or to mark the defective door. Anderson v. Lorentzen, 2 Cir., 160 F.2d 173.

■ The only warning of the defect which libellant might possibly have received was from the presence of "a little bit of light" which he said he noticed coming through the top of the door at the time when he was at work inside the car. This light did not necessarily indicate that the top rollers were no longer in place. It might well have been due to the loose fitting of the door. He also said that when he broke the seal in preparation for opening

the door, it bulged about an inch at the top. Whether these things indicated an absence of the top rollers or any other dangerous defect which rendered libellant guilty of contributory negligence in opening the door were matters for the trial judge. Libellant did not have the warning which he was entitled to if the door had been found to be defective on inspection and we cannot say as a matter of law that he had sufficient information as to its condition to make him guilty of contributory negligence in opening it when it finally proved to be in a condition that endangered his safety. Any irregularity which he noticed might not have apprized an ignorant man that he was carelessly running a risk of injury. The judge could properly find that Corrado did not know the rollers were off the door or that for any reason it was dangerous for him to open it until it became too late to abandon an operation which seemed safe enough when he undertook the opening.

■ We cannot justify respondent's claim based on the decision in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, holding that a stevedore should be classed as a seaman and awarded full indemnity against the owner of his vessel if she was unseaworthy. That decision in no way precludes a stevedore from recovering damages suffered as a business invitee which were occasioned by the negligence of the shipowner. It is most improbable that the Supreme Court, in adding to the stevedores' remedies those open to ordinary seamen, intended to deprive them of other pre-existing remedies. The following language of Mr. Justice Rutledge's opinion (328 U.S. at page 101, 66 S.Ct. at page 880, 90 L.Ed. 1099) in the latter case tends to show that such a remedy as is here invoked may still be pursued by a stevedore: "Congress by [the Longshoremen's and Harbor Workers'] Act [33 U.S. C.A. § 901 et seq.], not only did not purport to make the stevedore's remedy for compensation against his employer exclusive of remedies against others. It expressly reserved to the stevedore a right of election to proceed against third persons responsible for his injury * * *."

For the foregoing reasons the judgment is affirmed.