### McNEIL v. UNITED STATES et al.

#### No. 257/48.

United States District Court
E. D. Pennsylvania.
Aug. 17, 1950.

Martin J. Vigderman (of Freedman, Landy & Lorry), Philadelphia, Pa., for plaintiff.

Timothy J. Mahoney, Jr. (of Krusen, Evans & Shaw), Philadelphia, Pa., for defendant.

GANEY, District Judge.

This is a suit for damages for injuries sustained by libellant. Only the question of liability is before us. From the evidence presented before us, the Court makes the following

Findings of Fact:

1. On April 23, 1947, the libellant, a longshoreman, was engaged in the storing of cargo aboard the S. S. Louis Bamberger, then moored at Pier 46, on the Delaware River, at Philadelphia, Pennsylvania.

2. At the time the libellant was employed by Independent Pier Company, a stevedoring concern which had agreed to load the vessel.

3. The vessel was owned and operated by the United States; Weyerhaeuser Steamship Company was its general agent.

4. Before libellant's gang came to work, the bottom of the No. 5 hold of the vessel had been loaded with a layer of steel beams. The beams in turn had been covered by a flooring of dunnage by employees of Independent Pier Company so that more cargo could be more easily stored thereon. This dunnage consisted of boards or planks about one and seven-eighths inches thick, six to ten inches wide, and of varying lengths of ten to fourteen feet.

5. The dunnage used in the No. 5 hold was the property of the United States and was aboard the vessel when the employees of Independent Pier Company prepared the hold for cargo. The Respondent was aware of the use to which the dunnage would be put by the longshoremen.

6. In the late afternoon of April 23, 1947, spools of cable were lowered into the No. 5 hold of the vessel. These spools, varying from three to six feet in diameter, were moved from under the hatch opening back into the hold by the longshoremen who manually rolled them over the layer of dunnage. Libellant and two other members of his gang were in the process of rolling a spool of cable about three and one-half feet in diameter and two feet thick, and weighing about 1,800 pounds over the floor of dunnage into position for storing. While they were so doing, the spool tipped over toward the side where libellant was working and pinned his left leg between it and the floor.

7. The method by which and the manner in which libellant and his fellow longshoremen were moving the spool of wire cable were proper.

8. The cause of the spool's tipping over was a defective or decayed section of one of the dunnage boards which gave way or crushed under the weight of the spool.

9. This particular plank was inadequate for the purpose to which it was put.

10. Dunnage boards of the size and shape supplied by the Respondent, if in good condition, will bear the weight of an 1,800 pound spool when rolled over it.

11. Libellant was not aware of the defect in the dunnage board; nor, while he was working, would visual inspection reveal the defect to him.

12. Respondent failed to make certain that the dunnage was safe and adequate for the use to which it was put.

13. The defective dunnage was the sole proximate cause of libellant's injuries.

### Conclusions of Law

1. This court has jurisdiction of the subject matter and the parties to this action.

2. The defective plank of dunnage was the proximate cause of libellant's injuries.

3. Reasonable inspection of the defective dunnage plank by the libellant while he was working on the No. 5 hold of the vessel would not have revealed the defect.

4. Libellant is not chargeable with contributory negligence.

5. Respondent is liable to libellant for the damages sustained by him because of its failure to supply him with a reasonably safe place in which to work. Neptune Steam Nav. Co. v. Borkmann, 4 Cir., 1942, 118 F. 420; Munson S.S. Lines v. Newman, 5 Cir., 1928, 24 F.2d 416.

Libellant may submit a decree in accordance with the conclusions here reached.