Walter FILIPEK, Plaintiff-Appellant,

v.

MOORE–McCORMACK LINES, Inc., Defendant and Third Party Plaintiff-Appellee,

and

EASTERN RIGGING CORP., Third Party Defendant-Appellant.

No. 374, Docket 25096.

United States Court of Appeals
Second Circuit.

Argued May 14, 1958.

Decided Aug. 11, 1958.

James W. Forsyth, St. George, S. I., N. Y. (Jack Steinman, New York City, on the brief), for plaintiff-appellant.

Walter X. Connor, New York City (Charles N. Fiddler, Thomas F. Feeney, and Kirlin, Campbell & Keating, New York City, on the brief), for defendant and third party plaintiff-appellee.

Edmund F. Lamb, New York City (Lawless & Lynch and Purdy, Lamb & Catoggio, New York City, on the brief), for third party defendant-appellant.

Before CLARK, Chief Judge, and SWAN and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

This is an appeal from an order of Judge Bruchhausen, Eastern District of New York, 156 F.Supp. 854, setting aside a jury verdict for the plaintiff, Walter Filipek, in the amount of $47,500 and entering judgment n. o. v. for the defendant, Moore-McCormack Lines, Inc., or in the alternative granting a new trial. The third party defendant also appeals from so much of the order which dismissed the third party complaint without prejudice.

Filipek, a ship's rigger and boom tester, sued to recover for injuries sustained on December 23, 1952 while he was working on the defendant's vessel, the S.S. Mormacsurf. Two theories of recovery were advanced by the plaintiff, namely that the injuries were caused by the unseaworthiness of the ship and that the injuries were due to the negligence of the defendant, Moore-McCormack Lines, Inc. The shipowner impleaded as third party defendant Eastern Rigging Corp., the plaintiff's employer, upon the theory of implied indemnity.[1]

In December 1952 Moore-McCormack was engaged in outfitting the S.S. Mormacsurf for the Canadian trade. Under §§ 466 to 470 of the Canadian Shipping Act of 1934 (Revised Statutes of Canada [1952] Chapter 29, §§ 471 to 475, Vol. 1), for the protection of workers in the Canadian trade, a shipowner is required to have "the strength of machinery tackle and gear" employed in the loading and unloading of the ship tested and the tests certified by competent persons such as a representative of the American Bureau of Shipping. The plaintiff concedes that the Bureau will not certify safe working loads unless tests are made by skilled specialists, rather than by crew members. Included in the machinery to be tested were the kingposts, the booms, and all the appurtenances thereto. The kingposts are stationary vertical masts, from which extend steel cables or runners attached to the movable booms or poles. These booms or poles are capable of being lowered from an upright to an oblique or horizontal position by means of the cable running from the winches.

Moore-McCormack engaged the plaintiff's employer, Eastern Rigging, to conduct these tests of the S.S. Mormacsurf's equipment. On the day of the accident Eastern sent a crew of ten men aboard the ship to conduct the tests. The ten men were divided into two work gangs. The first gang, which included Filipek, immediately set about lowering the booms at Hatch No. 5 in the aft part of the ship to the desired angle for testing. They then prepared the booms at the No. 1 Hatch for testing and had started work at the No. 2 Hatch. In the meantime the second gang had completed the required testing of the machinery at the No. 5 Hatch. They then moved forward to the No. 1 Hatch and during the course of the testing there, when some

1. While the jury found for Eastern as between it and Moore-McCormack, in answer to five special questions, in view of our disposition of the appeal it is unnecessary to refer to the third party phases of the case.

14,000 pounds pressure was brought to bear on the boom, the kingpost snapped and broke off about eight feet above the deck and toppled in the direction of Hatch No. 2.

At the time the plaintiff was taking the kinks out of the topping cable attached to the boom at the No. 2 Hatch. He was not struck by the falling kingpost but when it fell the members of the plaintiff's gang ran from their posts and gave up control of the topping cable which, on being released, whipped across the deck, wrapped around the plaintiff's leg, and caused the injuries for which he seeks recovery.

■ The unseaworthiness claim may be disposed of briefly. The jury found, in answer to Special Interrogatory 5, that Moore-McCormack did not warrant the seaworthiness of the kingpost with respect to Filipek. The plaintiff now argues that this finding of the jury should be disregarded on the ground that the question should not have been propounded to the jury; and further that there was ample basis to support the jury's findings, in answer to interrogatories 3 and 4, that the ship was unseaworthy and that such unseaworthiness was the proximate cause of Filipek's injuries. We see no merit in this contention.

The plaintiff made no objection to the submission of interrogatory 5 to the jury and he will not now be heard to complain. Cf. Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A.; Adams v. Southern Bell Telephone & Telegraph Co., 4 Cir., 1924, 295 F. 586.

■■ In any event, the plaintiff did not warrant the seaworthiness of the vessel to Filipek. The doctrine of seaworthiness extends only to members of the ship's crew and to those, such as longshoremen, who do work traditionally done by members of the crew. See Berge v. National Bulk Carriers Corp., 2 Cir., 1958, 251 F.2d 717, certiorari denied 356 U.S. 958, 78 S.Ct. 994, 2 L.Ed.2d 1066; Halecki v. United New York & New Jersey Sandy Hook Pilots Ass'n, 2 Cir., 1958, 251 F.2d 708, certiorari granted 357 U.S. 903, 78 S.Ct. 1149, 2 L.Ed.2d 1154. Here the plaintiff's work was not that of a member of the crew. The Canadian law required that the testing be done by an outside expert who was not attached to the ship. It could not have been done by crew members; the American Bureau of Shipping would not have issued a certificate approving the tests if conducted by any member of the defendant's crew. See 46 U.S.C.A. §§ 881 and 369 and Coast Guard Regulations, 46 C.F.R. 90.35, 91.25–25 and 92.01.

We turn then to the main issue before us, namely, whether there was evidence sufficient to support the jury's findings that Moore-McCormack was negligent and that its negligence was the proximate cause of plaintiff's injuries, and their award of $47,500 damages.

■ First the plaintiff asserts that Moore-McCormack was negligent as it was chargeable with knowledge of the latent defect in No. 1 port forward kingpost which caused it to break and that it failed to advise the riggers of this defect. He points to the deposition of John Weber, a former seaman who had worked aboard the vessel, that in September 1952, over two months prior to Filipek's injury, the runner had fouled on the deck and that at that time Weber heard a cracking in the kingpost by the No. 1 Hatch. The fact that a runner broke three months previously is confirmed by a notation to that effect in the log book of the Mormacsurf signed by the Chief Officer, but that notation does not refer to any cracking in the kingpost. Indeed, Weber admitted that he did not tell anyone of the incident until he related it to the plaintiff's attorney after the institution of this suit and some four and one-half years after the occurrence. Any knowledge on the part of Weber cannot be imputed to the Mormacsurf as he was not in Moore-McCormack's employ on September 9, the date of the alleged cracking of the kingpost. According to Weber's deposition he had left the ship the day before and just returned to pick up his sea chest and pay some debts. His relation to the ship at the

time of the alleged cracking in the kingpost was that of a mere stranger. Admittedly a visual inspection of the kingpost itself would not disclose whether or not any damage had occurred to the kingpost as a result of this incident.

The only other evidence which bears on Filipek's related claim that Moore-McCormack failed to provide a safe place to work is the testimony of two of the plaintiff's co-workers that after the kingpost broke on December 23, 1952 they noticed some dark spots thereon which might have been rust. There is no evidence that this "rust" was visible prior to the accident or that the defendant knew or should have known of its existence at that time.

■ Thus, while it is true that there may have been some latent or hidden defect in the kingpost, there is no evidence that the defendant had any knowledge or notice of such a defect. Clearly the shipowner is not liable for injuries caused by "a latent defect that a reasonable inspection by the shipowner or his agents would not show." Wholey v. British & Foreign S.S. Co., D.C.E.D. N.Y.1908, 158 F. 379, 380, affirmed 2 Cir., 1909, 171 F. 399. See Cannella v. Lykes Bros. S.S. Co., 2 Cir., 1949, 174 F.2d 794, certiorari denied 338 U.S. 859, 70 S.Ct. 102, 94 L.Ed. 526; Bruszewski v. Isthmian S.S. Co., 3 Cir., 1947, 163 F.2d 720, certiorari denied 333 U.S. 828, 68 S.Ct. 451, 92 L.Ed. 1113; Jensen v. Bank Line, 9 Cir., 1928, 26 F.2d 173.

■■ Nor is there any merit to the claim that Moore-McCormack failed to see that the work was conducted in a safe manner. The defendant, having hired Eastern to test the booms (admittedly a hazardous task), was under no duty to protect the plaintiff from risks inherent in such testing. Bruszewski v. Isthmian S.S. Co., supra. The rule creating the duty to furnish a safe place to work does not apply where the prosecution of the work itself makes the place and creates the danger. As this Court said in Byars v. Moore-McCormack Lines, 2 Cir., 1946, 155 F.2d 587, 588: "The reason for this exception to the general rule is that it would be manifestly absurd to hold a master to the duty of providing a safe place when the very work in which the servant is engaged makes it unsafe."

■ The plaintiff also claims that the "space plate," which is a kind of brace on the kingpost, rendered the kingpost unsafe. In an attempt to prove this he called as a witness Captain Philip E. Shaw, a marine consultant who testified that the use of such a "space plate," welded as it was, tended to concentrate the stresses in the steel and that it was his "personal preference * * * to put a clamp on there in agreement with the American Bureau of Shipping, and tie the clamp to the bulkhead instead of stiffening up this whole area." The mere fact that a "space plate" was used did not render the place unsafe. That an expert has a personal preference for a certain type device does not mean that the use of other equipment constitutes a breach of the duty to use due care.

■ It is likewise clear that the plaintiff's charge that the defendant was negligent in failing to see that work was done safely is without merit. While certain of the ship's officers were present during the testing of the equipment, it is apparent that they were there not to direct the work or to participate in it in any way, but merely as observers. The work of Filipek and the other Eastern employees was actually supervised by Eastern's foremen. No orders were in fact given by any of the ship's officers. The mere presence of some of the ship's officers placed no duty on Moore-McCormack to see that the work was being done in a safe manner by Eastern's employees. Gallagher v. United States Lines, 2 Cir., 1953, 206 F.2d 177, certiorari denied 346 U.S. 897, 74 S.Ct. 221, 98 L.Ed. 398; Berti v. Compagnie De Navigation Cyprien Fabre, 2 Cir., 1954, 213 F.2d 397.

There was no evidence to support the verdict of the jury and Judge Bruchhausen's order setting the verdict aside and directing entry of judgment for Moore-McCormack was quite proper. Thus it is unnecessary for us to pass on the appeal of Eastern, the third party

defendant, as there is no question of Eastern's liability over to Moore-Mc-Cormack.

Affirmed.

CLARK, Chief Judge (dissenting).

The majority opinion herewith, perhaps taking its cue from plaintiff's brief and argument, makes this case appear quite complex. But to me it seems a simple one where the jury, after full proof and appropriate charge, has performed its historic function of rendering its verdict. If sustained on the evidence, that should stand, even though we may not like it.

The court charged the jury that it must find that defendant had notice of a defect in the boom and/or king post in order to find the defendant negligent. The jury, in answer to a special interrogatory, found that the defendant was negligent. Hence, in the jury's eyes, defendant must have had actual or constructive notice of the defect. If this finding is supported by the evidence the verdict must stand, for, as the majority implicitly concedes, it is not unreasonable for the jury to conclude that defendant's failure to warn plaintiff's employer of a known defect is negligence proximately related to plaintiff's injury. See Corrado v. Pennsylvania R. Co., 2 Cir., 171 F.2d 73, certiorari denied 336 U.S. 919, 69 S.Ct. 641, 93 L.Ed. 1081; Bruszewski v. Isthmian S. S. Co., 3 Cir., 163 F.2d 720, certiorari denied 333 U.S. 828, 68 S.Ct. 451, 92 L.Ed. 1113; Jensen v. Bank Line, 9 Cir., 26 F.2d 173.

At trial plaintiff introduced evidence that the space plate on the king post was of an inferior type, that rust spots were found on the king post after the accident, and that three months prior to the accident Weber, a seaman aboard defendant's ship, heard a cracking in the king post when another piece of equipment, a runner, employed in the operation of the boom, fouled during operation. This evidence is sufficient to support a finding that the defendant had at least constructive notice of some sort of defect in the king post.

The compelling strength of Weber's testimony in this respect is attested by the manner in which the court below and the majority here seek to avoid it. Judge Bruchhausen, noting that Weber had not mentioned the matter to anyone previous to his consultation with plaintiff's attorney after the accident and that the boom and king post were in normal use for three months after the alleged cracking was heard, chose not to believe the witness. D.C.E.D.N.Y., 156 F.Supp. 854, 857–858. While the trial judge has a large area of discretion in entering a judgment n. o. v., matters of credibility are always within the province of the jury. So the opinion herewith takes a different tack to steer around Weber's testimony. It summarily disregards the evidence as irrelevant because "Any knowledge on the part of Weber cannot be imputed to the Mormacsurf." True, Weber had been discharged on September 8, the day before the cracking incident, and had returned to the ship on September 9 just to pick up his gear. But the question is not whether Weber informed the Mormacsurf's officers of what he observed. It is whether defendant's employees in the course of their employment learned of the defect. Weber testified that there were several of defendant's employees standing and working near him when the incident occurred. Surely it is not unreasonable for a jury to find that if Weber heard the king post crack, defendant's employees did also, so that their knowledge is properly imputable to the employer. Moreover, it is not admitted, as the majority states, that a visual inspection of the king post would not have disclosed its defect. And Weber's testimony strengthens the inference drawn from the presence of rust spots on the post after the accident that the defect in the king post was discoverable by inspection.

I shall not repeat at length the concern I have previously voiced at what seems to me a growing judicial tendency to

invade the province of the jury. See Palermo v. Luckenbach S. S. Co., 2 Cir., 246 F.2d 557, 561–563, reversed 355 U.S. 20, 78 S.Ct. 1, 2 L.Ed.2d 3, with the verdict eventually reinstated, 2 Cir., 253 F.2d 724; Kermarec v. Compagnie Generale Transatlantique, 2 Cir., 245 F.2d 175, 183, certiorari granted 355 U.S. 902, 78 S.Ct. 335, 2 L.Ed.2d 259. But the vast number of cases where the Supreme Court has had to intervene in recent years to restore verdicts judicially scuttled should be recalled. See Palermo v. Luckenbach S. S. Co., supra, 355 U.S. 20, 78 S.Ct. 1, 2 L.Ed.2d 3; Honeycutt v. Wabash Ry. Co., 355 U.S. 424, 78 S.Ct. 393, 2 L.Ed.2d 380; Stinson v. Atlantic Coast Line R. Co., 355 U.S. 62, 78 S.Ct. 136, 2 L.Ed.2d 93; Gibson v. Thompson, 355 U.S. 18, 78 S.Ct. 2, 2 L.Ed.2d 1; Ringhiser v. Chesapeake & Ohio Ry. Co., 354 U.S. 901, 77 S.Ct. 1093, 1 L.Ed.2d 1268; McBride v. Toledo Terminal R. Co., 354 U.S. 517, 77 S.Ct. 1398, 1 L.Ed. 2d 1534; Thomson v. Texas & Pac. Ry. Co., 353 U.S. 926, 77 S.Ct. 698, 1 L.Ed.2d 722; Deen v. Gulf, Colorado & Santa Fe Ry. Co., 353 U.S. 925, 77 S.Ct. 715, 1 L.Ed.2d 721; Futrelle v. Atlantic Coast Line R. Co., 353 U.S. 920, 77 S.Ct. 682, 1 L.Ed.2d 718; Shaw v. Atlantic Coast Line R. Co., 353 U.S. 920, 77 S.Ct. 680, 1 L.Ed.2d 718; Arnold v. Panhandle & Santa Fe Ry. Co., 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889; Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; Webb v. Illinois Cent. R. Co., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed. 2d 503; Herdman v. Pennsylvania R. Co., 352 U.S. 518, 77 S.Ct. 455, 1 L.Ed.2d 508; Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 77 S.Ct. 459, 1 L.Ed.2d 515; Cahill v. New York, N. H. & H. R. Co., 350 U.S. 898, 76 S.Ct. 180, 100 L.Ed. 790; Strickland v. Seaboard Air Line R. Co., 350 U.S. 893, 76 S.Ct. 157, 100 L. Ed. 786; Anderson v. Atlantic Coast Line R. Co., 350 U.S. 807, 76 S.Ct. 60, 100 L.Ed. 725; O'Neill v. Baltimore & Ohio R. Co., 348 U.S. 956, 75 S.Ct. 447, 99 L. Ed. 747; Smalls v. Atlantic Coast Line R. Co., 348 U.S. 946, 75 S.Ct. 439, 99 L.Ed. 740; Stone v. New York, Chicago & St. Louis R. Co., 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441; Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497.

I would reverse and remand for the reinstatement of the verdict.