Blanche HOVIS, Libelant,

v.

THE Motor Vessel P AND G BOAT STORE, Her Machinery, Tackle, Apparel and Equipment, and the St. Louis Fuel and Supply Company, Inc., a Corporation, Respondents.

THE Motor Vessel P AND G BOAT STORE, Her Machinery, Tackle, Apparel and Equipment, and the St. Louis Fuel and Supply Company, Inc., a Corporation, Third-Party Libelants,

v.

THE Motor Vessel ARROWHEAD, Her Machinery, Tackle, Apparel and Equipment, and the Mid-West Towing Company, Inc., a Corporation, Third-Party Respondents (Respondents-Impleaded).

No. 58 A 144(1).

United States District Court
E. D. Missouri, E. D.

March 26, 1960.

Findings of Fact and Conclusions of Law April 16, 1960.

William J. Costello, St. Louis, Mo., for libelant.

A. G. Jannopoulo, St. Louis, Mo., for respondents.

Wilder Lucas, St. Louis, Mo., for respondents-impleaded.

GEORGE H. MOORE, District Judge.

This action is before the Court on motions by respondents-impleaded which collectively may be labelled as a motion to dismiss the impleading petition of respondents.

In brief, the facts are: Libelant, Blanche Hovis, a cook aboard the tow boat Arrowhead, brought suit against respondents, The Motor Vessel P and G Boat Store and its owner St. Louis Fuel and Supply Company, Inc., to recover damages for personal injuries sustained aboard the P and G Boat Store at the time libelant was being transported ashore from the Arrowhead. Respondents impleaded the tow boat Arrowhead and its owner, the Mid-West Towing Co., and alleged that Mid-West was either directly liable to libelant or, if respondents were found to be negligent, respondents had the right of "recovery over" against Mid-West for contribution or indemnity. Respondents-impleaded answered the petition and the libel. However, libelant did not plead to the answer of the respondents-impleaded, nor did she adopt the petition as her pleading, nor did she amend her libel to assert a claim against respondents-impleaded. Based on libelant's failure to adopt the allegation of direct liability, respondents-impleaded, shortly before trial, moved for a dismissal of the claim this Court reserved ruling on the motion and the cause was tried.

Respondents-impleaded now assert as further reason for such dismissal the fact that, although afforded additional opportunity and time, libelant has still failed to adopt the allegation of direct liability and, in fact, has expressly refused to adopt the allegation by stating in her trial memorandum that:

"Libelant has not pleaded against Third-Party Respondents and has taken the position that her injury was caused wholly and solely as a result of the negligence of Respondent * * *".

Respondents-impleaded also move for a dismissal of respondents' claim of "recovery-over" on the grounds that (a) "this being a non-collision case, contribution does not exist and (b) indemnity does not lie against respondents-impleaded as the respondents solely were guilty of negligence, and, even if not, their active negligence deprives them of any right of indemnity".

The first part of the motion presents the question whether the answer of re-

spondents-impleaded puts at issue the rights of libelant and respondents-impleaded respecting the claim of the libel even though libelant has expressly refused to adopt the allegation of direct liability. The determination of this question will be effected by the possibility that, if the Court finds those parties at issue, the Court may have to force a judgment on libelant against her expressed wish.

Admiralty Rule 56, Title 28 U.S.C.:

" * * * Permits the impleading of a new party in two different situations: one, where the impleaded respondent is directly liable to the libelant, either jointly or alternately with the original respondent or claimant; and the other, where the impleaded respondent is liable only to the original respondent or claimant and is brought in because the latter seeks a remedy over in case the libelant shall succeed against him." Cory Bros. & Co. v. United States, 2 Cir., 51 F.2d 1010, 1013.

In either situation, once process for impleader is issued, the suit:

" * * * shall proceed as if such vessel or person had been originally proceeded against; the other parties in the suit shall answer the petition; the claimant of such vessel or such new party shall answer the libel * * * ". Admiralty Rule 56.

Court interpretations of this rule do not clearly define the meaning of the phrase " * * * (the suit) shall proceed as if such vessel or person had been originally proceeded against * * * ". In the instance where the impleading petition alleges only recovery over for contribution or indemnity, the respondent-impleaded is not treated as an original party to the extent that rights between the libelant and respondent-impleaded may be adjudicated without libelant amending the libel or, by some affirmative act, adopting the allegations of the petition, so as to state a claim against respondent-impleaded. The Providence, D.C.R.I., 293 F. 595; Jensen v. Bank Line, 9 Cir., 26 F.2d 173. In the Jensen case, a stevedore filed a libel against the owner of a ship, who by petition, brought in the Stevedore Company "under Admiralty Rule 56, which permits the claimant to bring in a party jointly liable to any party to the suit by way of remedy over or contribution". Libelant did not answer the petition. The lower court, finding the respondent not liable, dismissed the libel and the petition. In affirming the dismissal of the petition, the Appellate Court held that the record did not require the trial court to make a finding on the issue brought in by the petition and that libelant, having failed to answer the petition, could not complain. The Court stated:

"In disregarding the petition as he did, he (libelant) exercised his right to elect not to proceed against a party as to whom he made no claim, and whom the (respondent) had no right to substitute in its stead as the party primarily liable. Having elected to proceed *in rem*, he was not compellable to establish the liability *in personam* of a new party brought in by the claimant." Id., at page 175.

Also, in Meglio v. United States Lines, D.C.E.D.N.Y., 143 F.Supp. 91, libelant, having failed to answer the impleading petition, was nevertheless held to have adopted the petition and to have complied with Rule 56 because libelant had filed, in connection with respondent's motion for impleader, a verified affidavit which, the Court stated, contained sufficient information to apprise respondent-impleaded that libelant was asserting a claim against respondent-impleaded. The record does not disclose whether the petition alleged a claim of direct liability or "recovery over". But, in either case, it would seem apparent from the Court's language that if libelant had not affirmatively manifested an intent to adopt the petition, libelant would not have asserted a claim against respondent-impleaded and the two would never have been at issue respecting the claim of the libel.

On the other hand, in contradiction to these holdings, judgment has been rendered against respondent-impleaded in favor of libelant, where libelant has neither expressly nor impliedly adopted the allegations of the petition. Thus, in The Millwood, S.D.N.Y., 1936 A.M.C. 73:

"The unseaworthy coal barge Millwood overloaded by 30 tons, leaked and sank. The owner of the barge, King, sued the charterer, Champion Co., which impleaded the Reading Co., whose men overloaded the barge. The Court gave King a decree of half damages against Reading primarily and Champion secondarily." Id. at page 73.

Thereafter, Champion's underwriter sued the barge and King, and the latter impleaded Reading. In this suit, Reading contended that no judgment could be rendered against it, since the libel did not charge Reading with fault and was not amended. In holding that the libelant was entitled to a decree against both King and Reading, the Court stated:

"In the petition properly interpreted, Reading is charged with the fault of overloading. * * * The answer of Reading to the petition to implead plainly manifests a complete understanding on its part that it was charged with fault * * *." Id., at 76; see also, The Syosset and The Horan, 1925 A.M.C. 891 (E.D. N.Y.); cf. 2 Benedict, Admiralty, 6th Ed., Sec. 351, and cases cited therein.

Although respondents and respondents-impleaded have not noted and have not attempted to explain this seeming inconsistency, this Court has considered as explanation the possibility of a distinction between the effect of an answer to a claim of direct liability and to a claim of "recovery over" (cf. The Sarnia, 2 Cir., 261 F. 900); i. e., in the former situation respondent-impleaded and libelant are at issue when the respondent-impleaded answers the libel, and in the latter situation they are never at issue unless libelant in some manner adopts the allegations of the petition. However, any reconciliation of the cases by distinguishing the two situations would not be persuasive because, in either case, Admiralty Rule 56 requires the libelant to answer the petition. Furthermore, the decisions, holding or implying that judgment may be rendered in the face of a libelant's failure to comply, do not consider nor are they based upon any distinction between the two situations.

Considering both views, this Court is of the opinion that the reasoning and holding of the Jensen case, supra, is applicable to the present action. To adjudicate the rights of libelant and respondents-impleaded respecting the claim of the libel would require this Court to approve libelant's express refusal to comply with Rule 56, and would require the Court to adjudicate an issue between parties who do not want the issue considered, and, perhaps, would require the Court to force a judgment upon one against expressed wishes. Respondents have not offered, nor can this Court determine, any reason for following this peculiar procedure. Furthermore, a basic purpose of impleader is to avoid multiple suits involving issues which arise from the same claim or cause of action. A dismissal of the claim of direct liability avoids additional litigation in the present action and presumably will bar libelant from asserting the claim in an independent action against respondents-impleaded. Jensen case, supra. For these reasons, this Court is of the opinion that the claim of direct liability should be dismissed.

Considering, now, the second part of the motion, this Court is of the opinion that respondents have no right of "recovery over" either for contribution or indemnity. In the present suit, a non-collision case in Admiralty, a respondent has no right of contribution against a party who the respondent claims is a mutual wrongdoer. E. g. Halcyon Line v. Haenn Ship Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318; Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143.

■■ With reference to indemnification there is not sufficient evidence to find that respondents-impleaded either expressly or impliedly assumed responsibility of the navigation or condition of respondents' vessel. Thus, if respondents were to have a claim of indemnification, the claim would have to be grounded on some charge against respondents-impleaded as mutual wrongdoers. However, it is axiomatic that respondents first must be found liable to libelant before any right to indemnification accrues and a finding that respondents are liable precludes respondents from asserting a right of indemnification against a mutual wrongdoer, as was said in Amerocean S. S. Co. v. Copp, 9 Cir., 245 F.2d 291, 294, 1957 A.M.C. 749, 753:

"When two parties, jointly and concurrently, breach the duty each owes to a third person and damage results to him, each is liable to the full extent therefor. Each had committed a wrongful act. Both are equally guilty of wrongful conduct. But one of such guilty parties has no right of indemnity or contribution from the other, if he has been held responsible in damages to the injured party. He cannot take advantage of his own wrong on the ground that the other is equally guilty. This doctrine is well established at common law and is followed in admiralty. An apparent exception is division of damage in ship collision cases."

Accordingly, an order will be entered dismissing the impleaded petition of respondents.

### Findings of Fact and Conclusions of Law

This is a libel in rem and in personam in which the libellant seeks to recover from the respondents for damages as a result of personal injuries. This cause came on for hearing on November 26, 1958 and, having considered the evidence and briefs, I have rendered my opinion in writing March 26, 1959 (a copy of which said opinion is attached hereto and made a part of these findings of fact and conclusions of law) and, therefore, pursuant to Supreme Court Admiralty Rule 46½, I find and conclude as follows:

### Findings of Fact

1. Respondents owned and operated a motor vessel known as P and G Boat Store which was used among other things to deliver stores to tow boats under way through the port of St. Louis, Missouri, on the Mississippi River.

2. Respondent carried out a custom and practice of allowing the P and G Boat Store to be used to transport tow boat employees either to tow boats from the shore or from tow boats under way to shore.

3. Respondent had as a regular customer for its small stores carried aboard the P and G Boat Store and for its fuel oil carried by a larger fuel boat, the Midwest Towing Company, owner of the tow boat Arrowhead.

4. On July 21, 1957, the tow boat Arrowhead was proceeding north on the Mississippi River to St. Paul, Minnesota and the captain had arranged with respondents for libellant to disembark from the vessel in the port of St. Louis by means of the P and G Boat Store while the tow boat Arrowhead was under way.

5. The operator of the P and G Store Boat, one Ronald Medley, age 18, employed by respondents for approximately one year, received instructions from respondents to proceed to the tow boat Arrowhead as it passed through the port of St. Louis on July 21, 1957.

6. The P and G Store Boat on July 21, 1957, carrying a relief cook for the tow boat Arrowhead and another person who was a friend of the relief cook, left its dock in St. Louis and proceeded to the side of the moving Arrowhead which was proceeding through the port of St. Louis at reduced speed.

7. The P and G Store Boat tied alongside the Arrowhead and was towed or pulled through the port of St. Louis in this manner while the operator went aboard the tow boat Arrowhead to sell supplies to the crew.

8. About 6:00 A. M. on July 21, 1957, libellant disembarked from the Arrowhead and, by invitation of the respondents and their operator to be taken ashore, went aboard the P and G Store Boat along with two other members of the crew of the Arrowhead and stood on the deck at the bow in front of an open steel door leading to the pilot house.

9. Said steel door was allowed by the operator to remain either open or unhooked or hooked open by means of a ring too large to prevent the hook from slipping out when the vessel was being operated under conditions ordinarily to be anticipated on the river.

10. The lines were cast off and the P and G Store Boat quartered out and away from the Arrowhead, which was still moving at reduced speed, and when some 150 feet away from the side of the Arrowhead, the P and G Store Boat made a sudden sharp turn to port without warning to libellant causing the vessel to heel sharply to starboard and throwing libellant and the other passengers standing near off balance and causing libellant to reach out with her left hand to grasp the door jamb to keep from falling overboard and causing the aforementioned steel door to slam shut violently on libellant's thumb and sever libellant's left thumb at the base of the distal phalanx. The closing of said door was not caused by the wash or backwash of the M. V. Arrowhead or through any negligence on its part.

11. Libellant, bleeding profusely, was taken to City Hospital No. 1 in the City of St. Louis where she remained five days during which time the wound was debrided and a full thickness skin graft sutured in place using skin lifted from the left forearm and patterned to fit the thumb's stump end and the left thumb nail rongeured and nail radix removed by sharp dissection down to the phalanx.

12. Libellant continued to be treated as an out-patient once a week after her discharge from the hospital, during which time the wound was lanced and drained and libellant was caused as a direct result of said injury to remain off work six months until January 21, 1959 when she returned to work on the tow boat Arrowhead.

13. Libellant's employer paid her wages for four of the six months which she was off as a result of her injury and she suffered a net loss of wages amounting to fifty-one days or $658.92.

### Conclusions of Law

1. Respondents sold stores and fuel to libellant's employer, Midwest Towing Company, and this economic benefit was dependent in part upon accommodating the purchaser by transporting its employees to and from the shore to its tow boats.

2. Respondents extended an express and implied invitation to libellant to come aboard its vessel P and G Store Boat to be taken ashore.

3. Respondents extended an invitation to libellant to come aboard the P and G Store Boat, and respondents received an economic benefit by transporting libellant to shore and libellant, therefore, was a business visitor to the P and G Store Boat under Federal Maritime Law.

4. Respondents, through their operator, operated the P and G Store Boat in an unseamanlike and negligent manner under the circumstances by turning the vessel suddenly and sharply to port without warning and causing it to heel so sharply to starboard.

5. Respondents, through their operator, failed to properly fasten and secure the heavy steel door of the P and G Store Boat so as to prevent it from swinging free and slamming shut and injuring the libellant.

6. Respondents' vessel P and G Store Boat was unseaworthy as a result of the dangerous condition of said heavy steel door.

7. Libellant sustained a traumatic amputation of the end of her left thumb as a direct and proximate result of the negligence of respondents and the unseaworthy condition of the P and G Store Boat.

8. The disability to libellant's left thumb is permanent.

9. Libellant is entitled to damages in rem against the vessel P and G Store Boat and in personam from respondents for her special damages and for pain and suffering and permanent disability to her left thumb in the total amount of $3,000.

10. Libellant is entitled to receive her costs herein.