Henry J. GODFREY, Jr., Libelant,

v.

The UNITED STATES of America, Respondent.

No. 64–830–EC.

United States District Court
S. D. California,
Central Division.

Jan. 15, 1965.

Linsley & Linsley, by Edward G. Linsley, Long Beach, Cal., for libelant.

Manuel L. Real, U. S. Atty., Clarke A. Knicely, Asst. U. S. Atty., John F. Meadows, Atty., in charge, LaVerne E. Evans, Special Atty., Dept. of Justice, Los Angeles, Cal., for respondent.

CRARY, District Judge.

Libelant, a radar and electronics technician, seeks damages for personal injuries allegedly received when he stepped back with his left leg into an open deck hatch, twenty-three inches in diameter, in the control room of a Navy LCU during underwater closed circuit television operations re recovery of a dummy missile about eight miles off San Clemente Island. At the time of the accident, the libelant, who was employed by Photo-Sonics, Inc., an independent contractor with the Navy, was moving back from a TV monitor and equipment for controlling movement of the submerged TV camera, which monitor and equipment he was, at the time, operating and on which his attention was focused. He stepped back into the hatch after getting up from the chair where he had been seated watching and operating the monitor and camera control equipment. The chair was just a few inches in front of and to the left of the hatch, and the libelant testified he moved the chair to his left on arising.

He suffered contusions over the left lumbar area and severe pain and examination revealed muscle spasm and possible kidney damage. He was hospitalized until August 23, 1963. The accident occurred on August 18, 1963.

Usual conservative treatment was administered until September 9, 1963, when he was discharged from care and his case closed. On November 18, 1963, he again complained of back pain and on January 28, 1964, he was referred to Dr. Rhorer, an orthopedist. See Dr. Rhorer's report on examination and findings, January 28, 1964, libelant's Exhibit 3. Libelant returned to work and worked for Photo-Sonics, Inc., from about August 28 to December 16, 1963. On January 28th Dr. Rhorer recommended he again return to work. Dr. Rhorer diagnosed the back pain as lumbosacral strain, chronic, and discharged the libelant in April, 1964.

Report of Dr. Polmeteer, a neurologist and surgeon, (respondent's Exhibit G) evidences that Godfrey was examined by him on *May 18, 1964*, at which time he complained of pain in his back and left calf and diminished hearing. As history received from libelant, the doctor states that on May 14th he started work for the Long Beach Navy Shipyard as electronics technician and on that day developed increasing pain in back while lifting an oscilloscope with another employee which, Godfrey testified on the stand, weighed over fifty pounds. The pain in the back and left leg had occurred on an average of once or twice weekly until "the accident of May 14, 1964" and was constant since then. (Exhibit G, page 2.) The doctor's notes further state that libelant suffered back injury in Texas in 1962 while lifting furniture and was treated by Dr. Rogers. Dr. Polmeteer, under "Impressions," states in his report that " * * * on May 14, 1964, he suffered a new injury * * *" and that the low back condition " * * * obviously had been aggravated by the new accident on May 14, 1964."

All x-rays of the libelant's spine taken in 1962 and thereafter were essentially normal. There was a slight development narrowing at the fifth lumbar interspace. (January, 1964, x-ray and Dr. Rhorer's report, Exhibit 3.) Dr. Dalmain, for the respondent, testified he believed this narrowing was due to the 1962 injuries in Texas.

Dr. Rogers, who examined and treated the libelant in Texas, in his deposition (Respondent's Exhibit E) relates the details of the back injury resulting to libelant from lifting furniture, the first on October 25, 1962, and the second November 3, 1962. His diagnosis was left lumbar disc syndrome. Libelant was hospitalized for one week and still had pain in the left lower back on November 27, 1962. A sacroiliac belt was prescribed and libelant returned to work. On December 11th the libelant told the doctor " * * * he was working but that it was almost killing him * * *." The doctor, at page 10 of his deposition, states, " * * * months after I had stopped treating him, and after he returned to work * * * it was still my opinion that he had 10% permanent par-

tial loss of use of the body as a whole * * *." Dr. Rhorer testified that the 1962 injury, in his opinion, contributed to the need for the fusion performed by him in August, 1964, to the extent of 15 to 20%. Dr. Dalmain was of the opinion that there was probability of a disc syndrome caused by the 1962 injuries and that the fall in August, 1963, had exacerbated the nerve root irritation caused by the 1962 injuries. Electromyograms and pantopaque myelogram were negative.

The chief issues are:

(1) Was libelant a seaman within the provisions of Title 28 U.S.C. § 1916, and Lowicki v. Skibs A. S. Herstein, 182 F.Supp. 585 (D.C.Md.1960)?

(2) Was the warranty of seaworthiness extended to the libelant?

(3) Did the injury on August 18, 1963, result from negligence of the respondent?

(4) Damages.

■ The court concludes the libelant was not a "seaman" within the provisions of Title 28, U.S.C. § 1916. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; and Lowicki v. Skibs A. S. Herstein, supra. The warranty of seaworthiness has been extended to longshoremen, not because they are seamen but because they perform duties traditionally performed by seamen, to wit, the loading and unloading of ships. See Seas Shipping Co. v. Sieracki, supra, 328 U.S. at pages 98–99, 66 S.Ct. 872.

■ The record discloses that the libelant was a radar and electronics specialist, employed by an independent contractor who had contracted with the Navy to perform research and development work in connection with the use of underwater TV in the retrieving of missiles. This work started about May, 1964. Special equipment was required and libelant's duties were the operation and repair of the underwater closed TV circuit. It was necessary to enlist the services of a subcontractor to accomplish this work. Libelant's duties were not connected with the ship's seagoing oper-

ations and he was not an employee of the Navy. Having in mind all the circumstances, it does not appear to the court that libelant was performing duties traditionally performed by seamen and that, therefore, the warranty of seaworthiness was not extended to him. See United New York and New Jersey Sandy Hook Pilots Association v. Halecki, 358 U.S. 613 at 617–618, 79 S.Ct. 517, 3 L.Ed.2d 541. Filipek v. Moore-McCormack Lines, 2 Cir., 258 F.2d 734 at 736.

■ The court finds that the respondent's employee, Mr. Ramirez, was negligent in leaving the hatch open for one to three minutes while he was below checking cables on winches retrieving the camera. He had hurried below to check against cable overlap on the winches and did not place the safety hatch cover over the open hatch as required by ship rules although he had reasonable time to do so. This failure, the court concludes, was the proximate cause of the injury. There is some question in the court's mind as to the advisability of stationing the monitor where those intent on its observation and control are working almost over a deck hatch which is required to be opened frequently.

■ The libelant has suffered damages which the court finds to be as follows:

(a) Loss of earnings, past and future, in the sum of $9,974.26. [See libelant's Exhibit 9 and stipulation re this figure.]

(b) Future doctor and medical expense, $75.00.

(c) Pain and suffering, past and future, $7,500.00.

The court does not conclude that all said damages flow from the injury on August 18, 1963. Dr. Rogers certified in early 1963 [Respondent's Exhibit E] that libelant was 10% permanently disabled as a result of injuries in October and November, 1962. Dr. Rhorer was of the opinion that libelant will have 10% or less permanent disability. Without reviewing in detail all of the testimony of Doctors Rohrer, Dalmain, Polmeteer

and Rogers re the causes of a need for the fusion, suffice it to say that the court concludes, after full consideration of all the evidence, that the injuries resulting from the fall on August 18, 1963, were 65% of the proximate cause for the said fusion. The court does not conclude, in the circumstances, there was contributory negligence on the part of libelant.

Counsel for libelant is requested to prepare, serve and lodge proposed Findings of Fact, Conclusions of Law and Judgment in accordance with this memorandum and Rule 7, as amended, Local Rules of this court.

Judgment will be conditioned upon libelant's payment of fees and complying with all conditions required of a plaintiff who is not a seaman.

This memorandum is not to be deemed a final judgment.